# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JORGE NUNEZ )
    Plaintiff, )
     )
    v. )
     )   C.A. No.: N18C-12-213 SKR
MARCO A. CABRERA t/a )
NORTH SOUTH AUTO, INC., )
     )
    Defendant. )

## DECISION AFTER TRIAL

Jared T. Green, Esquire, Seitz, Van Ogtrop, & Green, P.A., *Attorney for Plaintiff.*

Eric M. Andersen, Esquire, Andersen Sleater Sianni LLC, *Attorney for Defendant.*

# I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a business relationship gone awry. Jorge Nunez ("Plaintiff") and Marco A. Cabrera ("Cabrera") met in 2013 through a family friend.[1] In February of 2013, Plaintiff and Cabrera entered into a business agreement to sell cars.[2] There were no written agreements between the parties.[3] Instead, Plaintiff and Cabrera simply agreed that they would split the costs to purchase the cars.[4] They would then sell the cars through an auto dealership, North and South Sales, Inc. ("the Dealership"), where Cabrera was a partial owner.[5]

Although Plaintiff testified that he never had any agreements with the Dealership specifically, he would deposit his half of the money to purchase the car into the Dealership's account.[6] After the sale, Cabrera would pay Plaintiff a percentage of the profit in cash.[7] This arrangement went on for approximately four years "without any problems."[8] The relationship terminated sometime between 2017 and 2018.[9]

On May 30, 2019, Plaintiff filed a Complaint against the Dealership, for breach of contract based on the oral agreement. Plaintiff alleged that the Dealership owes him $42,114.00 for cars that were previously sold, and $16,676.00 for cars

---

[1] Trial Tr., 21:10-12.
[2] *Id.* at 21:19-20.
[3] Parties' Pretrial Stipulation at 2.
[4] Trial Tr., 23:1-12.
[5] Id. at 24:7-13. ("It all depended on how much it was. We split it between [Cabrera] and I.") 96:20-23.
[6] *Id.* at 23:10-18.
[7] *Id.* at 25: 13-15.
[8] *Id.* at 25:18-20.
[9] *Id.* at 25:21 – 26:2. (Nunez: "When I found out about the cars that were lost, I decided to terminate our relationship, and I divided everything I had between us.") 119: 8-14. (Cabrera: "On May of 2018 . . . we stopped the relationship with Mr. Nunez. We told him that we didn't want Mr. Nunez to sell cars at the Dealership anymore.")

that have not been accounted for. On December 19, 2018, Plaintiff filed a Complaint against Marco Cabrera individually, making the same allegations. Thereafter, the parties stipulated to consolidate Plaintiff's claim against Cabrera with Plaintiff's separate claim against the Dealership (collectively, "Defendant").[10]

On September 11, 2019, Defendant filed an Answer, denying that there was a breach of contract, and filed a Counterclaim for Unjust Enrichment. Defendant alleged that Plaintiff did not pay a Lot Fee for nine cars he stored with Defendant, and further claims that Plaintiff owes $17,610.00 plus pre-judgment interest.

## II.     THE TRIAL

The Court held a one-day bench trial on August 18, 2021. The case was deemed fully submitted for decision after the parties submitted their post-trial briefing.

During trial, the Court heard from and considered the testimony of the following witnesses:

| | |
|---|---|
| Jorge Nunez | Ohanna Acosta-Moore |
| Joanna Cabrera | Marco Antonio Cabrera[11] |

## III.    STANDARD OF REVIEW

The Court is the finder of fact in a bench trial.[12] The plaintiff must prove each element of a claim by a preponderance of the evidence, meaning that the Court shall

---

[10] This stipulation was agreed upon as part of the resolution of Plaintiff's Motion for Default Judgment. On June 3, 2019, Defendant Cabrera moved to set aside the default judgment entered by the Prothonotary on February 19, 2019. On June 11, 2019, Plaintiff filed an Opposition to the Motion. Plaintiff agreed to withdraw his opposition subject to the actions being consolidated.

[11] In the Pre-Trial Stipulation, Plaintiff named three additional witnesses. They did not appear at trial.

[12] *Pencader Associates, LLC v. Synergy Direct Mortg. Inc*., 2010 WL 2681862, at *2 (Del.Super. June 30, 2010).

find in favor of the party upon whose side "the greater weight of the evidence is found."[13] Since the Court is the finder of fact, it is up to the Court to weigh the credibility of witnesses and resolve conflicts in witness testimony.[14]

## IV.   ANALYSIS

### A. There is insufficient evidence to prove that Defendant owes Plaintiff additional funds.

At the outset of the case, Plaintiff asserted that Defendant owed him $58,590.00 in total for two different claims:  $15,976.00 for fifteen missing cars[15] and $42,614.00 for sixteen cars that Defendant allegedly sold and received payment. In post-trial briefing, Plaintiff withdrew the claim for the missing cars worth $15,976.00.[16]

As to the remaining $42,614.00 in question, Defendant contends that the Statute of Frauds should invalidate the agreement. But Defendant concedes that Plaintiff is owed $12,730.00 for funds received after the relationship terminated, if the Court finds that the Statute of Frauds does not apply.

Leaving the Statute of Frauds question aside for the time being, the Court finds that there is insufficient evidence to award Plaintiff the remaining $29,884.00 sought.[17] He has not proven by a preponderance of evidence that Defendant owes him these funds.

---

[13] *Id.* (quoting *Pouls v. Windmill Estates, LLC,* 2010 WL 2348648, at *4 (Del.Super. June 10, 2010)).
[14] *Id.* at *3.
[15] Cabrera testified that the junk yard owner "junked" the cars. *See* Trial Tr., 114:9 – 115:22. ("We had to move all of these cars out of this lot . . .I didn't have the money . . .When I went back . . . two weeks later I go back [sic]. I don't see the cars there . . .")
[16] Pl.'s Br. at 10, fn 4.
[17] Plaintiff originally sought $58,790.00. *See* Compl. However, in post-trial briefing, he withdrew claims related to the vehicles that were unaccounted for. See Pl's Br. at 10, fn 4 &

4

In post-trial briefing, Plaintiff acknowledges the lack of evidence supporting his claim: "Neither party can point to a document, other than demonstratives, which proves or disproves, their positions."[18] However, Plaintiff still argues that it is more likely than not that Defendant has "received, and retained, funds owed to Nunez."[19]

Plaintiff relies on two pieces of circumstantial evidence: (1) the testimony of Joanna Cabrera and (2) the fact that a number of Dealership cars could not be located through GPS tracking.

Joanna Cabrera, a 50% shareholder of the Dealership, and the individual who prepared documents, invoices, and financial spreadsheets for the company,[20] acknowledged that she gave Plaintiff payments "for his portion of the cars that he was invested in."[21] Defendant Cabrera testified that after May of 2018, he did not received any payments from customers for any of the remaining cars in which Plaintiff had an interest. Plaintiff argues that it is very curious and highly improbable "that all payments ceased on vehicles co-owned by Nunez immediately following the fissure of the parties' business and personal relationships."[22]

Plaintiff flags portions of Joanna Cabrera's testimony to underline this point. First, Plaintiff's Counsel asked her if customers made any more payments on the cars in question after May of 2018:

---

Trial Ex. 4. Plaintiff now claims that he is due $42,614.00, in addition to pre- and post-judgment interest, the costs of the action, and such other relief as the Court deems just. From that amount, Defendant has conceded that Plaintiff is owed $12,730.00 which leaves $29,884.00 as the amount in dispute.

[18] Pl's Br. at 5-6.

[19] Pl's Br. at 6.

[20] Trial Tr., 77:16-78:10.

[21] *Id.* at 79:22 – 80:2.

[22] Pl's Br. at 7.

Q: Did you ever receive any other payments on any of these cars?

A: I am sure I received one. I don't know. I don't have those spreadsheets.[23]

Next, Plaintiff's Counsel asked if the Dealership made any efforts to obtain further payments on the cars:

Q: Were any of those attempts successful?

A: I couldn't tell you without looking at the formula. There might have been some, there might have been none. I mean, there might have been something coming in. There might have been payments that didn't come in. I couldn't go over and tell you, yes, every single person paid, and I couldn't tell you, no, they weren't paid. I am sure there were payments coming in.[24]

Further, Plaintiff points to several delinquent cars, that the Dealership attempted to repossess but failed. For example, Defendant Cabrera testified that a delinquent 2009 Nissan Maxima could not be repossessed:

"We had a GPS on this vehicle, but the customer went out to Florida on this car. A couple months later we were going to track the car with a company that we have that tracks vehicles through a GPS. Unfortunately, we

---

[23] Trial Tr., 88: 7-10.
[24] *Id.* at 91: 21- 92: 9.

6

couldn't connect with the GPS, so the customer didn't do [sic] anymore payments. We lost the vehicle."

Plaintiff argues, without any evidence, that it is illogical to believe that the GPS systems "coincidentally" stopping working just when repossession efforts were initiated on these delinquent cars. Plaintiff suggests that Defendant Cabrera continued to receive payments and kept the money for himself.

Plaintiff is asking the Court to find in his favor based on mere speculation. First, Defendant Cabrera already conceded that there were payments made after May of 2018, in the form of $12,730.00. Thus, any argument about payments "coincidentally" stopping after May of 2018 is obviated. Further, Joanna Cabrera did not provide a definitive answer in her testimony about receipt of payments. Plaintiff ignores Joanna Cabrera's testimony that the proof of payment could only be demonstrated by "who[ever] collects the payment," and she does not recall collecting the payments on these cars. As to the repossessed cars and the failed GPS systems, Plaintiff is asking the Court to find that Cabrera successfully repossessed cars but is using the malfunctioning GPS as an excuse to not remit payment to Defendant. The Court will not ascribe such malevolence to Cabrera without definitive proof.

As Plaintiff acknowledged, the parties dealings were not documented and their business transactions were cash based. Moreover, agreements between Plaintiff and Defendant were done orally. There are no records of concrete proof of payments received from customers for vehicles after May of 2018. Indeed, Plaintiff could only testify that he *assumed* that customers came into the Dealership and paid off the balance on each of the cars for which he seeks payment.[25] The burden

---

[25] *Id.* at 56:13-20.

of proof is on Plaintiff to prove his claim by a preponderance of evidence. He has not done so. Plaintiff is unable to put forth any non-speculative evidence that Cabrera received and withheld funds that should have been payable under the parties' oral agreement. Thus, the Court finds that other than the conceded amount of $12,730.00 addressed below, Defendant does not owe Plaintiff additional funds.

### B. Plaintiff is owed $12,730.00.

As previously stated, Defendant concedes that Plaintiff is owed $12,730.00 in payments based on the parties profit allocation for cars sold.[26] Notwithstanding, Defendant asserts that the Statute of Frauds invalidates the Agreement in total because it was a verbal contract that cannot be completed within one year. An application of the law to the record in this case demonstrates that the Statute of Frauds does not invalidate this Agreement.[27]

The Delaware Statute of Frauds states that parties must reduce to writing, and the defending party must have signed, any agreement that cannot be completed within one year from its making.[28] The Delaware Supreme Court has held that the Statute of Frauds does not apply to a contract which, "by any possibility," may be performed within a year.[29] Further, the Court will look to the understanding and intention of the parties at the time when the Agreement was entered.[30]

Defendant testifies that it would be impossible for the cars to be completed within a year "from purchase to final payment from the customer." Yet, there is no evidence to support this claim.[31] There are no written contractual agreements with

---

[26] Trial Ex. 4.
[27] *State v. Skates*, 2021 WL 3929551 at *3, (Del. Super. Sept. 2, 2021) (TABLE).
[28] *Olson v. Halvorsen*, 986 A.2d 1150, 1155 (Del. 2009).
[29] *Haveg Corp. v. Guyer*, 211 A.2d 910, 912 (Del. 1965).
[30] *Id.*
[31] Trial Tr., 132: 13-16, 133: 20-23.

the customers that define the length of the contract. Hence, it is plausible that a customer could pay off a purchased car in less than a year. Further, the record is devoid of evidence that outlines the special time frame for payments to be made to Plaintiff under this unique, informal arrangement. For these reasons, the Court finds that this agreement is not barred by the Statute of Frauds, and is enforceable. Thus, Plaintiff is awarded $12,730.00 that Defendant conceded is owed pursuant to the Agreement.

### C. Defendant North & South Sales, Inc. is liable for the award of damages.

Defendant moved to dismiss Marco Cabrera from the lawsuit, alleging that he should not be personally liable for the debts of the corporation.[32] Plaintiff does not address this argument in his post-trial briefing.

While the oral agreement was made between Plaintiff and Defendant Cabrera, it is clear that Cabrera was acting as an agent for the Dealership. The parties agreed that each car's title and bill of sale, of which there was a joint investment, was titled in the Dealership's name. The lienholder of the title after transfer to a new owner was the Dealership.[33] The bills of sale and titles for the cars in question were filed in the Dealership office. Defendant testified that it was a regular part of the Dealership's business to keep and maintain these types of records.[34] No cars were personally titled in Marco Cabrera's name.

The Dealership picked up car parts, ensured that the cars were inspected with the state, and "[e]nsured that the labor was completed" on the cars.[35] All of

---

[32] *Chestnut Hill Plaza Holdings Corp. v. Parkway Cleaners, Inc.*, 2011 WL 1885256, at *3 (Del. Super. May 17, 2011).
[33] Trial Tr., 109:1-6.
[34] *Id.* at 142:1-9.
[35] *Id.* at 106:20-22.

these cars were purchased, refurbished, and sold using the Dealership bank accounts.

It is apparent that Plaintiff's business agreement was with the Dealership rather than Defendant Cabrera as an individual. Joanna Cabrera testified that she would not allow Marco to have a side operation selling cars; everything he did was through the Dealership. His name would be included on the bills of sale, as he would be the agent that signed on behalf of the Dealership.[36] There is no evidence in the record from which this Court could find Cabrera personally responsible for the damages awarded to Plaintiff. Consequently, Mr. Cabrera is personally dismissed from the action and Defendant North & South Sales is liable for the damages awarded.

### D. There is insufficient proof to establish Defendant's unjust enrichment counterclaim.

Defendant asserts a counterclaim for unjust enrichment for (1) unpaid parking fees for cars that Plaintiff kept at and then removed from the Dealership and (2) cars that Plaintiff kept at the Riverview Lot. In total, Defendant alleges that $17,610.00 is owed.

The Riverview Lot is a "closed storage lot" where cars that were not ready for sale were stored. Defendant Cabrera testified that Plaintiff was charged $150 a month to store cars there.[37] Defendant proffers evidence of a lease agreement between the Dealership and the Riverview Lot,[38] however there is no evidence of an agreement between Plaintiff and Defendant for storage fees. Defendant alleges that Plaintiff stopped paying the Riverview fees in May of 2018.

---

[36] *See.* Ex. 6.
[37] Trial Tr., 146: 12:13-16.
[38] Trial Exhibit 17.

As to the cars left at the Dealership, the parties dispute how much Plaintiff paid to store his cars there. Plaintiff testified that he paid Defendant a total of $66 a month to store cars on the Dealership lot.[39] Defendant contends that Plaintiff stored cars at the Dealership at a rate of $66 per month, per car. Nunez removed these cars from the Dealership when he filed the lawsuit.[40]

Defendant has failed to establish that fees are owed for either lot. Defendant's Counterclaim states that the Lot Fee "varied in amounts and the parties did not have a set agreement upon the amount of the Lot Fee."[41] There is no evidence of Plaintiff owing money for the Riverview Lot. As to the Dealership lot, while Plaintiff conceded that he paid $66 a month during the course of the business relationship, there is no evidence in the record of when Plaintiff stopped making payments and how long the cars remained after payments ceased. For these reasons, the Court is unable to account for how much money, if any, is owed. Defendant has failed to meet his burden to put forth sufficient evidence to establish an unjust enrichment claim for unpaid parking fees.

**E. Conclusion**

For the reasons set forth above, the Court finds that Defendant owes $12,730.00 to Plaintiff in addition to pre-judgment and post-judgment interest at the legal rate.

**IT IS SO ORDERED,** this 28th day of June, 2022.

_____
Sheldon K. Rennie, Judge

---

[39] Trial Tr., 34: 20 – 35:5.
[40] *Id.* at 146: 3-8.
[41] Counterclaim, ¶ 1.

11